### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| INTERNAL REVENUE SERVICE, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) Case No. 23-cv-1331-JES |
| | ) |
| ANTHONY J. WALLACE, | ) |
| | ) |
| Appellee. | ) |

### **ORDER AND OPINION**

This matter is before the Court on Appellant Internal Revenue Service's ("IRS") Motion for Leave to Take Interlocutory Appeal. Doc. 3 (the "Motion"). Appellee Anthony J. Wallace filed a Response. Doc. 6. For the following reasons, the Motion is DENIED. However, the Court upon *sua sponte* addressing the issue of subject matter jurisdiction, finds that the Bankruptcy Judge erred and so VACATES the Bankruptcy Court's Opinion and Order, *Wallace v. Internal Revenue Service (In re Wallace)*, PWH-23-8005, Docs. 27, 28 (Bankr. C.D. Ill. Aug. 18, 2023), and REMANDS the case back to the Bankruptcy Court to proceed in a manner consistent with Opinion and Order.[1]

### **Background[2]**

On December 19, 2022, Mr. Wallace filed a petition in the Bankruptcy Court to initiate a voluntary Chapter 7 bankruptcy case. BK Doc. 1. In the petition, Mr. Wallace listed his income

---

[1] The Court generally cites the Bankruptcy Court's Opinion by reference to the published version. *See Wallace v. Internal Revenue Service (In re Wallace)*, 653 B.R. 256 (Bankr. C.D. Ill. 2023).

[2] The Court shall refer to the adversarial proceeding case docket, 23-ap-8005, as AP, followed by the docket entry (*e.g.*, AP Doc. 1). The bankruptcy case docket, 22-bk-80765 is cited as BK (*e.g.*, BK Doc. 1). And, citations to this Court's docket, 23-cv-1331, are indicated by reference to only the docket entry (*e.g.*, Doc. 1).

tax, from 2012 to 2019, as debts owed to the IRS. *See id.* at 29, 31-33. The amount of debt owed on a per-year basis ranges from $8,667 to $53,061. *Id.*

The case then proceeded in standard fashion: Mr. Wallace filed his certification of credit counseling (BK Doc. 3), and a creditors meeting was held on February 1, 2023. BK Doc. 8. Approximately one month after the meeting, the events giving rise to the district court's involvement in the case began to unfold.

On March 8, 2023, Mr. Wallace filed an adversarial complaint (the "Complaint") against the IRS to determine the dischargeability of his income tax debt for years 2012 through 2018, pursuant to 11 U.S.C. § 523(a)(1). AP Doc. 1 at 1-2.[3] Section 523 encompasses a list of debts, including the taxes at issue here, that are excepted from a bankruptcy court's discharge order. The Complaint does not indicate that the IRS had threatened to collect those debts, or that it had otherwise indicated that it was entitled to do so. *See id.* Additionally, Mr. Wallace sought relief in the form of a finding that his income tax debts for those years are satisfied under § 523(a)(1), as well as an order enjoining the IRS from attempting to collect those debts. *Id.* at 3.[4]

On April 14, 2023, the Bankruptcy Court issued a notice of adversary deficiency, as the IRS had failed to respond to the Complaint in a timely manner. AP Doc. 6. Ten days later, the

---

[3] In subsequent citations to 11 U.S.C. § 523, the Court omits a reference to Title 11. The Court elaborates on the contours of § 523 in the discussion section of the opinion.

The Court agrees with the IRS that, even though the Complaint appears to be raised under § 523(a)(1), it is actually brought pursuant to Fed. R. Bankr. P. 4007, as § 523 does not provide an independent cause of action. AP Doc. 31 (the Answer) at 2.

[4] Apparently, Mr. Wallace thought that by filing the certification of completion of a financial management course as is required for discharge, his discharge order would be entered, and he would somehow jeopardize the Bankruptcy Court's ability to rule on the adversarial proceeding. BK Doc. 18. But, so long as there exists a live Case or Controversy in the adversarial proceeding, his concerns remain unfounded. *See Wallace*, 653 B.R. at 260 n.1. Mr. Wallace submitted his certification of completion on August 22, 2023. BK Doc. 21.

parties filed an agreed motion extending the IRS's time to respond to May 24, 2023. AP Doc. 10. The Bankruptcy Court granted that motion and ordered that Mr. Wallace may file a motion for default on or before May 24, 2023. AP Doc. 11.

On May 24, 2023, both parties filed motions with the Bankruptcy Court. Mr. Wallace filed a motion for default judgment (AP Doc. 13) and the IRS filed a motion (AP Doc. 15) requesting that the court abstain from hearing the adversary complaint, supported by a memorandum. AP Doc. 16. On that same day, the IRS also filed a motion to extend the time for it to file an answer to the Complaint (AP Doc. 17), which was granted. AP Doc. 18.

After a telephonic hearing on the outstanding motions (AP Doc. 22), the Bankruptcy Court denied the motion for default judgment. AP Doc. 23. Six days later, on June 26, 2023, Mr. Wallace filed a response to the IRS's motion to abstain. AP DOC. 25. And, the IRS filed a Reply. AP Doc. 26. Then, on August 18, 2023, the Bankruptcy Court issued its Opinion (AP Doc. 27) and Order (AP Doc. 28) denying the IRS's motion to abstain. Shortly thereafter, on August 25, 2023, the Bankruptcy Court entered an Order of Discharge under 11 U.S.C. § 727 in connection with Mr. Wallace's bankruptcy petition. BK Doc. 22.

On September 6, 2023, the IRS filed its notice of appeal (Doc. 1) from the Bankruptcy Court's Opinion (AP Doc. 27) and Order. AP Doc. 28. Also on September 6, 2023, the IRS filed the Motion. Doc. 3.[5] In the Motion, the IRS raises three questions as providing grounds for the Court to grant leave to appeal. While these questions are discussed in greater detail *infra*, they mainly pertain to the Bankruptcy Court's alleged mistake in determining it had subject matter

---

[5] The IRS also filed a motion to exceed the page limit as outlined in the Central District of Illinois's Local Rules. Doc. 5. The Court granted that motion. *See* Text Order Dated October 11, 2023.

jurisdiction over the Complaint, as well as its erroneous decision to deny the IRS's motion to abstain.

The Court pauses to note that Mr. Wallace's response to the Motion is of limited value. Doc. 6. Mr. Wallace's ***single-page*** response is comprised, entirely, of the following arguments:

1. Debtor respectfully asserts that the granting of an interlocutory appeal will not materially advance the underlying adversary proceeding, as the issues involved are bankruptcy issues that the bankruptcy court is competent and able to decide.

2. Debtor further asserts that the bankruptcy court did not abuse is discretion in denying the request for abstention.

3. Debtor further asserts that his financial resources to litigate these matters is limited, as evidenced by the property and income schedules in his bankruptcy filing.

The Court now turns to the issues raised in the Motion.

### Subject Matter Jurisdiction

Two of the three questions presented by the IRS in its Motion have "sounded alarm bells" for the Court, as they concern the Bankruptcy Court's determination of its subject matter jurisdiction over the case. *Ind. Right to Life Victory Fund v. Morales*, 66 F. 4th 625, 629 (7th Cir. 2023). These questions are (Doc. 3 at 7):

1. Whether the Bankruptcy Court erred in determining that a justiciable case or controversy within the meaning of Article III existed at the time Mr. Wallace filed the adversary complaint even though (a) the discharge had not yet been entered because the time to object had not expired; (b) the IRS had not yet determined whether tax debts would be excepted from the scope of any subsequent discharge; and (c) the IRS had not resumed or threatened to resume collection activity with regard to those tax debts?

2. Whether, if there was no Article III case or controversy at the time the adversary complaint was filed, post-complaint events (*i.e.*, the Department of Justice's subsequent determination regarding the merits of the dischargeability issue with which the IRS then agreed) cured the lack of jurisdiction?

When reviewing the decision of a bankruptcy court, a district court "acts as an appellate court and applies the same standards of review that are appropriate in other appellate decisions." *In re Resource Technology, Corp.*, MFK-08-2425, 2008 WL 4876846, at *3 (N.D. Ill. Nov. 7, 2008) (citing *Green v. Mass. Cas. Ins. Co.*, 269 B.R. 782, 787 (N.D. Ill. 2001)).[6] In line with acting as an appellate court, the Court is "'bound to evaluate… the jurisdiction of the court below, *sua sponte* if necessary.'" *Buchel-Ruegsegger v. Buchel*, 576 F.3d 451, 453 (7th Cir. 2009) (quoting *Int'l Union of Operating Eng'rs, Local 150 v. Ward*, 563 F.3d 276, 282 (7th Cir. 2009)). Because of the Court's independent duty to evaluate subject matter jurisdiction, it is appropriate at this juncture to directly resolve the troubling jurisdictional issues raised in the Motion. *See Butler v. Google, LLC.*, No. 22-2113, 2023 WL 2759050, at *2 (7th Cir. Apr. 3, 2023).[7]

As a threshold matter, the Bankruptcy Court cited *Sprout v. Internal Revenue Service (In re Sprout)*, CKP-19-02113, 2020 WL 2527376, at *3-5 (Bankr. S.D. Ohio May 15, 2020), to support its statement that "[s]ubject-matter jurisdiction is secure." *Wallace*, 653 B.R at 259.

---

[6] As such, a bankruptcy court's rulings on questions of law, as well as mixed issues of law and fact, are subject to *de novo* review by the Court. *See BMO Harris Bank, N.A. v. Petr*, JMS-22-1742, 2023 WL 3203113, at *1 (S.D. Ind. May 2, 2023) (citing *Grede v. FCStone, LLC*, 746 F.3d 244, 251 (7th Cir. 2014); *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 776 (7th Cir. 2013)). And of importance here, *de novo* review also applies to issues concerning Article III justiciability. *See Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022).

[7] If I were to refrain from addressing subject matter jurisdiction head-on, and instead grant the IRS leave to appeal the case's justiciability issues, the parties would be unduly burdened by the additional cost of litigation and the assured delay in the ultimate disposition of the case. Furthermore, arguments regarding subject matter jurisdiction can be raised at any time and may not be waived. *See Flynn v. PHH Mortgage Corp. (In re Flynn)*, ___ B.R. ___, 2023 WL 6323118, at *3 (Bankr. S.D. Ind. Sept. 28, 2023) (citations omitted). In this way, if I were to deny the Motion without addressing the IRS's jurisdictional concerns, the IRS would be free to raise the issue on appeal after the Bankruptcy Court entered a final order in the adversarial proceeding. And so, the Court would expose itself to the quandary of having to preside over duplicative proceedings. Against this background, the Court also finds it prudent and in the interests of judicial economy and administration to address the adequacy of the Bankruptcy Court's exercise of jurisdiction over the dispute.

However, the bankruptcy court in *Sprout*, 2020 WL 2527376, determined that it had "subject matter jurisdiction over the Adversary Proceeding" based on it being "related to" the underlying bankruptcy case. *Id.* at 4. The Bankruptcy Court here cited *Sprout* to support that it has jurisdiction "arising under title 11." *Wallace*, 653 B.R at 259. "Arising under" and "related to" jurisdiction are two distinct subcategories of dispute and "related to" jurisdiction may not be exercised at this juncture. *See Bush v. United States*, 939 F.3d 839 (7th Cir. 2019). A bankruptcy court must be mindful of its source of jurisdiction under 28 U.S.C. § 1334. As the parties do not dispute the Bankruptcy Court's jurisdiction as arising under Title 11, this Court shall operate as though the Bankruptcy Court either incorrectly cited *Sprout* or only cited *Sprout* to highlight a general discussion of subject matter jurisdiction.[8]

Yet, regardless of whether the Bankruptcy Court holds "arising under" or "related to" jurisdiction over the case, that alone is insufficient for it to exercise subject matter jurisdiction because Article III's Case or Controversy restrictions "apply to proceedings in bankruptcy courts just as they do to proceedings in district courts." *Allied Waste Industries, Inc. v. Steinberg (In re Resource Technology Corp.)*, 624 F.3d 376, 382 (7th Cir. 2010) (citing *In re FedPak Sys., Inc.*, 80 F.3d 207, 213 (7th Cir.1996)).[9]

---

[8] On the same note, neither the parties nor the Court take issue with the Bankruptcy Court's statement that a debtor's claim "that certain debts are dischargeable… goes to the 'core of the federal bankruptcy power' to restructure debtor-creditor relations." *Wallace*, 653 B.R at 260 (citing *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982)). But the Bankruptcy Court's authority to restructure debtor-credit relations is not limitless. In a similar vein, Fed. R. Bankr. P. 4007(b) permits a complaint to determine the dischargeability of a debt under § 523(a)(1) to be filed at any time. Nevertheless, that rule does not exempt a complaint from any applicable procedural and constitutional requirements.

[9] In some circuits, bankruptcy courts are not shackled by Article III's Case or Controversy requirement. *See Kiviti v. Bhatt*, 80 F.4th 520, 532 (4th Cir. 2023); *see also Furlough v. Cage (In re Technicool Sys., Inc.)*, 896 F.3d 382, 385 (5th Cir. 2018) ("Bankruptcy courts are not Article III creatures bound by traditional [justiciability] requirements.").

Article III's Case or Controversy requirement "prevents federal courts from answering legal questions, however important, before those questions have ripened into actual controversies between someone who has experienced (or imminently faces) an injury and another whose action or inaction caused (or risks causing) that injury." *Prosser v. Becerra*, 2 F.4th 708, 713 (7th Cir. 2021) (internal quotation omitted). "These limitations, requirements, and prohibitions are embodied in the so-called justiciability doctrines—standing, mootness, ripeness, and the prohibitions on providing advisory opinions and answering political questions." *Sweeney v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021) (citing 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3529 (3d ed. 2020)). A justiciable "controversy must be extant at all stages of review," including but not limited to the filing of a complaint. *Paramount Media Grp., Inc. v. Village of Bellwood*, 929 F.3d 914, 919 (7th Cir. 2019) (internal quotation omitted).

Of relevance here are the doctrines of standing and ripeness. I address each in turn.

"Standing has three elements. A plaintiff must have (1) a concrete and particularized injury in fact (2) that is traceable to the defendant's conduct and (3) that can be redressed by judicial relief." *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 937 (7th Cir. 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "'To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Mack v. Resurgent Cap. Servs., L.P.*, 70 F.4th 395, 403 (7th Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). "As the party seeking to invoke federal jurisdiction, [Mr. Wallace] bears the burden of establishing h[is] standing to sue." *Nabozny v. Optio Solutions LLC*, ___ F.4th ___, 2023 WL 6967048, at *2 (7th Cir. Oct. 23, 2023) (citation omitted).

The Bankruptcy Court did not address the elements of standing.[10] Rather, it asserted that "[d]ebtors *always* have standing to seek a discharge." *Wallace*, 653 B.R. at 261 n.2 (emphasis in original).[11] The Bankruptcy Court's statement appears to be rooted in two distinct, but well-known and connected principles, the first of which is that "one of the fundamental purposes of bankruptcy [is] to determine the extent of a debtor's discharge." *Wallace*, 653 B.R. at 261 n.2 (citing *Harvey v. Dambowsky (In re Dambowsky)*, 526 B.R. 590, 603 (Bankr. M.D.N.C. 2015)). The second principle is that "[a] Chapter 7 bankruptcy allows the debtor to get a 'fresh start' by discharging his debts." *Wallace*, 653 B.R. at 261 n.3 (citing *Bartenwerfer v. Buckley*, 598 U.S. 69, 143 S. Ct. 665, 670 (2023)). Indeed, the Bankruptcy Court buttressed this assertion when it stated that it

---

[10] This Court notes that the Bankruptcy Court cites *In re James Wilson Associates*, 965 F.2d 160, 168 (7th Cir. 1992), to define "standing." *Wallace*, 653 B.R. at 260. But that case concerned a creditor's standing, not a debtor's standing. And, to the extent the Bankruptcy Court utilizes that case to support Mr. Wallace's standing to invoke "statutes intended to provide the honest debtor with a fresh start," the Bankruptcy Court put the cart before the horse. *Id.* That is, because the Bankruptcy Court erred in finding the existence of a "real and substantial controversy," there was no basis for Mr. Wallace to invoke the statute, even if he may otherwise be able to do so at a later time. *Id.* For those same reasons, the Bankruptcy Court's citation to *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975), for the assertion that "Article III is not offended," is also incorrect. *Wallace*, 653 B.R. at 260.

[11] The Bankruptcy Court also cited *Central Va. Community College v. Katz*, 546 U.S. 356, 364 (2006), for the proposition that "[t]he debtor has standing under the Bankruptcy Code to seek discharge of his prior debts." *Wallace*, 653 B.R. at 260. But *Katz* did not touch on a debtor's standing at all, let alone an analogous issue. The *Katz* opinion does not mention "standing," "justiciability," or "Case or Controversy" a single time. This is because the Supreme Court was focused on whether a bankruptcy court's jurisdiction implicates state sovereign immunity. The Bankruptcy Court's actual citation, *i.e.,* page 364 in *Katz*, largely refers to the Supreme Court's historical review of discharge orders in bankruptcy proceedings and how such orders typically bind a state or state agency. Sovereign immunity is not an issue here.

It is possible that the Bankruptcy Court, in citing *Katz*, intended to draw on the Supreme Court's statement that "[c]ritical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." 546 U.S. at 363-64. However, that quotation does not lend support to the Bankruptcy Court's conclusion as to Mr. Wallace's standing.

"wonders how refreshing it is to have potential tax liability lingering over one's shoulder for an indefinite period of time." *Wallace*, 653 B.R. at 261 n.3.[12] Thus, at heart, the Bankruptcy Court has combined these two principles for the proposition that a debtor has standing to seek the dischargeability of his debts, as it is integral to his fresh start.

Although a debtor's fresh start is undeniably an important goal of the Bankruptcy Code, it is not the sole objective. A closer look at *Buckley*, one of the cases cited by the Bankruptcy Court for its "fresh start" rationale, *Wallace*, 653 B.R. at 261 n.3, reveals that "[t]he Bankruptcy Code strikes a balance between the interests of insolvent debtors and their creditors. It generally allows debtors to discharge all prebankruptcy liabilities, but it makes exceptions when, in Congress's judgment, the creditor's interest in recovering a particular debt outweighs the debtor's interest in a fresh start. *Buckley*, 598 U.S. at 72. Indeed, the Supreme Court criticized the petitioner's characterization of "the Bankruptcy Code as focused on the unadulterated pursuit of the debtor's interest." *Id.* at 81. The Supreme Court also noted, *id.* (citation omitted) (alteration added):

> [T]he Code, like all statutes, balances multiple, often competing interests. Section 523 is a case in point: Barring certain debts from discharge necessarily reflects aims distinct from wiping the bankrupt's slate clean. Perhaps Congress concluded that these debts involved particularly deserving creditors, particularly undeserving debtors, or both. Regardless, if a fresh start were all that mattered, § 523 would not exist. No statute pursues a single policy at all costs, and we are not free to rewrite this statute (or any other) as if it did.

The Supreme Court's reasoning applies, in force, to the facts at issue in this case. Mr. Wallace brought his Complaint to determine whether his tax debts were dischargeable pursuant to

---

[12] The Court notes that Mr. Wallace's tax debts would not necessarily hang over his head like the sword of Damocles, as the IRS is bound by a 10-year statute of limitations from the date the tax was assessed to collect the debt, barring any possible extensions or stays. *See United States v. Shadoan*, TWP-21-560, 2021 WL 5281093, at *7 (S.D. Ind. Nov. 12, 2021) (citing 26 U.S.C. § 6502)). Though it is true that a debtor who dishonestly avoids taxes may have those taxes assessed at any time, *see* 26 U.S.C. § 6501(c), including after the entry of a discharge order, for the reasons discussed *infra*, such a possible assessment does not frustrate the goals of the Bankruptcy Code.

§ 523(a)(1), and in doing so, Mr. Wallace arguably sought to verify the extent of his fresh start. AP Doc. 1. But, as the Supreme Court noted, § 523 evinces a distinct purpose separate and apart from providing a debtor with a fresh start. And so, the Bankruptcy Court's apparent determination that the Bankruptcy Code, in aiming to provide an honest but unfortunate debtor with a fresh start, would thus confer standing on a debtor who attempts to determine the dischargeability of certain debts, misses the mark in assuming that the Bankruptcy Code is singularly focused.

Of relevance, the subsection at issue here, § 523(a)(1)(C), targets the dischargeability of tax debts owed by deceitful, rather than honest debtors. It provides that "[a] discharge under section 727… of this title does not discharge an individual debtor from any… tax…with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." *Id.* If Mr. Wallace's apprehension stems from his dishonesty, then the Bankruptcy Court's concern over Mr. Wallace's "fresh start" is completely unfounded. Indeed, "[t]he benefits of [a] 'fresh start' [] are limited to the 'honest but unfortunate debtor.'" *Pilura v. Brady (In re Brady)*, 624 B.R. 429, 437 (C.D. Ill. 2020) (quoting *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)).

On the other hand, it would not be reasonable for Mr. Wallace, assuming that he was an honest debtor, to worry over the dischargeability of his debts under § 523(a)(1)(C).[13] And, even if Mr. Wallace is simultaneous of strong moral fiber and yet impractically concerned, worried, upset, or stressed about his tax debt, such injuries, while important, are insufficiently concrete to support his standing to bring a claim. *See Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 638 (7th Cir. 2023) (citations omitted). Thus, whether Mr. Wallace was an honest or a dishonest debtor, the

---

[13] As noted, Mr. Wallace brought his Complaint to determine the extent of dischargeability under § 523(a)(1). Both § 523(a)(1)(A) and (B) do not necessitate dishonesty. However, § 523(a)(1)(C) clearly involves deceitful behavior. And so, by requesting clarification as to his tax debts under § 523(a)(1) generally, he automatically implicated § 523(a)(1)(C).

Court cannot agree with the basis for the Bankruptcy Court's finding that Mr. Wallace had standing to determine whether his tax debts are subject to discharge.[14] It is of no mind that, at the time the

---

[14] The Court acknowledges that the Bankruptcy Court cited two cases for the assertion that "[o]utstanding debts, including for past taxes, pose a direct threat to a debtor's fresh start in bankruptcy," thus indicating that a threat to a debtor's fresh start is sufficient to confer standing. *Wallace*, 653 B.R. at 260 (citing *Landrie v. Internal Revenue Service (In re Landrie)*, 303 B.R. 140, 142 (Bankr. N.D. Ohio. 2003); *Kilen v. United States (In re Kilen)*, 129 B.R. 538, 542 (Bankr. N.D. Ill. 1991). However, these cases are inapposite and of *de minimis* persuasive value.

*Kilen*, 129 B.R. 538, concerned a debtor (*i.e.*, Mr. Kilen) who had filed individual bankruptcy under Chapter 11, and was also an "owner, director or officer of 31 corporations, each of which filed its own bankruptcy petition." *Id.* at 539. The IRS filed a proof of claim against the corporations, but it apparently made no effort to determine the extent of the corporations' respective tax liabilities. *Id.* at 540. And, due to Mr. Kilen's status as a "responsible person" under § 6672 of the Internal Revenue Code, he was subject to potential personal liability for any taxes owed by the corporations. *Id.* This was particularly trying for Mr. Kilen, as he had set aside $640,000 in trust, as part of his discharge plan, to be payable to his creditors. *Id.* The funds were set to first be distributed to priority creditors (including the IRS), and once paid out, any remaining funds would be awarded to unsecured creditors. *Id.* at 549. Thus, if the IRS were to delay in assessing the corporate tax debts, but eventually determine that Mr. Kilen was personally liable for those debts, he may be left to foot a large tax debt out of his own post-discharge pockets. *Id.* In finding that the trust distribution was imminent, the court concluded that there was indeed a justiciable controversy that comported with Article III's Case or Controversy requirement. *Id.* at 548-549. Therefore, the holding in *Kilen* is founded on an exigency concerning the availability of funds to pay potential creditors. Dissimilarly, Mr. Wallace's Complaint constituted a blanket request for the determination of dischargeability as to his tax debts under § 523(a), with no aggravating circumstances or mitigating factors warranting the Bankruptcy Court's early ruling.

*Kilen*, 129 B.R. 538 is also distinguishable on the basis that Mr. Kilen filed a proof of claim on behalf of the IRS, *id.* at 547, whereas here, Mr. Wallace did not file a proof of claim on behalf of the IRS. *See Dycoal, Inc. v. Internal Revenue Service*, TMS-05-679, 2006 WL 360642, at *12 (W.D. Pa. Feb. 15, 2006) (distinguishing *Kilen*, 129 B.R. 538 on this basis).

As to *Landrie*, 303 B.R. 140, the facts in that case are much more analogous to the matter *sub judice*. There, the court was faced with a similar question as the Bankruptcy Court here: Does a debtor satisfy the Case or Controversy requirement when seeking to determine whether his tax debts are subject to discharge? The *Landrie* court ultimately held that the case was justiciable, and in doing so, it relied on the IRS's prior investigation into the debtor's financial affairs in conjunction with the IRS's "unequivocal refusal to acknowledge the dischargeability of the tax debts at issue." *Id.* at 143. And so, the court noted that a scenario where the IRS attempts to collect tax debts otherwise subject to discharge was "more than just a remote possibility" and thus the IRS's "contingent claim" was sufficient to establish a Case or Controversy "entitling the Plaintiff to maintain an action to determine the dischargeability" of his tax debts. *Id.* However, in arriving

11

Bankruptcy Court issued its Opinion, the "existence of the debt and the imminent discharge [was] not speculative or hypothetical." *Wallace*, 653 B.R. at 261.

Accordingly, the Court turns to the arguments, and supporting authority, provided by the IRS for its assertion that the Bankruptcy Court lacked subject matter jurisdiction to consider Mr. Wallace's Complaint because, at the time of filing, there was no threat that the IRS would collect tax debts that may be excepted from discharge under § 523(a)(1). Doc. 3 at 7.[15]

The IRS cites a string of cases indicating that "dischargeability actions brought by debtors against the United States before the IRS had staked out a position on the dischargeability of the subject federal tax debts and commenced (or threatened to commence) collection activity are not currently justiciable disputes." Doc. 3 at 13 (citing *Hinton v. United States*, JHL-09-6920, 2011 WL 1838724 (N.D. Ill. May 12, 2011); *Namai v. United States (In re Namai)*, MMH-20-44, 2023 WL 5422627 (Bankr. D. Md. Aug. 21, 2023); *Erikson v. United States (In re Erikson)*, WS-12-5546, 2013 WL 2035875 (Bankr. E.D. Mich. May 10, 2013); *Sheehan v. United States (In re Sheehan)*, AIH-09-1351, 2010 WL 4499326 (Bankr. N.D. Ohio. Oct. 29, 2010); *Mlincek v. United States (In re Mlincek)*, 350 B.R. 764 (Bankr. N.D. Ohio. 2006).[16] The Court has reviewed these

---

at this conclusion, the *Landrie* court did not address an iota of case law concerning standing or ripeness. Instead, it appears merely to have assumed justiciability on the basis that a contingent claim, in qualifying as a "debt" under the Bankruptcy Code, rendered the action justiciable. The Court is thus not persuaded by the reasoning in *Landrie* and so the Court cannot conscionably rely on *Landrie* to rubberstamp the Bankruptcy Court's determination as to Article III justiciability.

[15] For that matter, the IRS also claims that it had not even determined whether the exemption applied to Mr. Wallace. Doc. 3 at 7. But such a claim is somewhat redundant, as the IRS's determination that the exemption applies is tantamount to an imminent tax collection effort.

[16] The Bankruptcy Court did not discuss the rationale contained within those cases cited by the IRS, or for that matter, distinguish them from the case at bar. Instead, the Bankruptcy Court merely stated that the IRS provided some cases as examples for the above-noted proposition. *Wallace*, 653 B.R. at 259.

cases and adopts their reasoning but refrains from rehashing the repeated analysis in its entirety. Instead, the Court notes that these decisions arising from debtor-initiated adversarial proceedings without imminent threat of an IRS collection are rooted in principles of justiciability. Whether a court abstained from presiding over a case or dismissed an adversarial complaint for lack of jurisdiction, the underlying principle remains the same: A debtor does not have *carte blanche* to bring an action under § 523(a)(1) to determine whether his tax debts are excepted from discharge, as there is no justiciable controversy unless the IRS has argued that the exception applies or has otherwise threatened to collect the debtor's tax debts.[17]

Herein lies the crux of the dispute.

This Court is confident that, had the IRS threatened to collect Mr. Wallace's tax debt when he filed his Complaint, then he would have had standing to determine the extent of the dischargeability of his tax debts, as his injury (*i.e.*, the IRS collection) would have most certainly been imminent and the case would have been ripe. *Mathis v. Metro. Life Ins. Co.*, 12 F.4th 658, 663–64 (7th Cir. 2021) ("A case is ripe when it is not dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all.") (quotation omitted).[18] In this way,

---

[17] This Court does not find *Cosmano v. United States (In re Cosmano)*, ABG-21-59, Doc. 102 (Bankr. N.D. Ill. Transcript of Dec. 12, 2022), to be persuasive. There, the bankruptcy court held that the parties' disagreement about whether tax debts were excepted under discharge pursuant to § 523(a)(1)(C) was insufficient to confer the debtor with standing. Instead, that judge held that standing required an action, or threatened action, from the IRS to collect the debt. This Court finds such analysis to be flawed, in the sense that parties' disagreement about the dischargeability of tax debts certainly renders it likely that the IRS would intend to collect on those debts. In this way, this Court's ruling on the issue would not be an impermissible advisory opinion, *i.e.*, "a legal declaration that could not affect anyone's rights." *Fendon v. Bank of America, N.A.*, 877 F.3d 714, 716 (7th Cir. 2017). As such, this Court, as well as the Bankruptcy Court and the IRS, are rightly "**skeptical**" of the ruling in *Cosmano*. *See Wallace*, 653 B.R. at 261 n.2; AP Doc. 26 at 4. Needless to say, this Court's ruling is not reliant on the holding or reasoning in *Cosmano*.

[18] The Court recognizes the IRS's argument that the Complaint was not ripe when filed because the ultimate discharge order was not yet entered. But courts routinely find the existence

13

and in this case, the issues of standing and ripeness cannot help but bleed into one another and form a justiciable controversy. *See Smith v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 23 F.3d 1134, 1141 (7th Cir. 1994) ("The doctrines of standing and ripeness are closely related, and in cases like this one perhaps overlap entirely."). And so, under such hypothetical facts, the Bankruptcy Court could have rightly found it had subject matter jurisdiction over the Complaint. *See Ind. Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549 (7th Cir. 2007) ("A case or controversy requires a claim that is ripe and a plaintiff who has standing.").

But, without any indication that the IRS intended to collect Mr. Wallace's tax debts, Mr. Wallace's Complaint "'point[ed] only to [a] hypothetical, speculative, or illusory dispute[] as opposed to actual, concrete conflict[].'" *In re Gallo*, 573 F.3d 433, 441 (7th Cir. 2009) (quoting *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008). To complicate matters, through the IRS's own post-complaint admission, the agency now threatens that it will argue for the application of § 523(a)(1)(C) and request the district court to reduce Mr. Wallace's tax debts into a money judgment. *See* Doc. 3 at 16; *see also* AP Doc. 31 at 4. Thus, the case exists in a quagmire where the IRS has created the conditions for the case to be adjudicated, *see Union Pacific Railroad Co. v. Regional Transportation Authority*, 74 F.4th 884, 886 (7th Cir. 2023), but for the purpose of the Bankruptcy Court's exercise of jurisdiction, the IRS has done so too late. Therefore, the Bankruptcy Court lacked jurisdiction to consider Mr. Wallace's Complaint.

This, however, does not end the inquiry.

---

of "a justiciable case or controversy, for purposes of determining the dischargeability of taxes even before a discharge has been entered." *Dunn v. State of California, Franchise Tax Board (In re Dunn)*, RSB-08-9020, 2008 WL 4346454, at *3 (Bankr. E.D. Cal. Sept. 15, 2008) (collecting cases). Additionally, the discharge order is now entered, so the argument is moot moving forward.

Courts are "'generally discourage[d]… from *sua sponte* dismissing a complaint for lack of subject matter jurisdiction without first providing the plaintiff notice and a hearing or an opportunity to amend. Such a dismissal is improper unless the jurisdictional defect is incurable.'" *United States v. Furando*, 40 F.4th 567, 579 (7th Cir. 2022) (quoting *George v. Islamic Rep. of Iran*, 63 F. App'x. 917, 918 (7th Cir. 2003)). Here, the jurisdictional defect may be curable.

Fed. R. Civ. P. 15(d), made applicable by Fed. R. Bankr. P. 7015, states:

Supplemental Pleadings. On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

"In contrast to amended pleadings, which relate to matters that occurred before the filing of the original pleading, supplemental pleadings under Federal Rule of Civil Procedure 15(d) 'are intended to cover matters occurring after the original complaint is filed.'" *NCJC, Inc. v. Lawrence*, SRN-17-2385, 2018 WL 2122867, *3 (D. Minn. May 8, 2018) (quoting *U.S. ex rel. Kinney v. Stoltz*, 327 F.3d 671, 673 n.4 (8th Cir. 2003)). Furthermore, "jurisdictional defects can be cured in appropriate situations 'if the plaintiff obtains leave to file a supplemental pleading under Rule 15(d) reciting post-filing events that have remedied the defect.'" *Enesco Grp., Inc. v. Campanaro (In re Enesco Grp., Inc.)*, ABG-11-402, 2013 WL 4045756, at *10 (Bankr. N.D. Ill. Aug. 8, 2013) (quoting *Black v. Sec'y. of Health & Human Servs.*, 93 F.3d 781, 790 (Fed. Cir. 1996)).

Considering the foregoing, the relevant post-complaint event here, *i.e.*, the IRS's declared intention to collect Mr. Wallace's tax debts pursuant to § 523(a)(1)(C), may be pleaded by Mr. Wallace in a supplemental filing pursuant to Rule 15(d) so as to cure the Complaint's jurisdictional defect at the time of filing. And so, the Bankruptcy Court may wish to provide Mr. Wallace with time to file a supplemental pleading. *See Landmark Health Sols., LLC v. Not For Profit Hosp.*

*Corp.*, 950 F. Supp. 2d 130, 135 (D.D.C. 2013) ("… the court can order supplemental pleadings that outline events that have transpired since the date of the party's most recent pleading….") (citing *United States v. Hicks*, 283 F.3d 380, 385–86 (D.C. Cir. 2002)).

In light of the foregoing, the Court has no reason to grant the IRS's request for leave to appeal 1) whether a Case or Controversy existed at the time Mr. Wallace filed his Complaint and 2) whether post-complaint events cured any initial jurisdiction defects. And, as there is no present basis for the Bankruptcy Court to exercise jurisdiction over the case, any dispute concerning Bankruptcy Court's refusal to abstain under 28 U.S.C. § 1334(c) is rendered moot. *See* Doc. 3 at 7. And so, the Court must deny the Motion.

## Conclusion

In light of the above considerations, the Bankruptcy Court's Opinion and Order, *Wallace v. Internal Revenue Service (In re Wallace)*, PWH-23-8005, Docs. 27, 28 (Bankr. C.D. Ill. Aug. 18, 2023), is VACATED, because the Bankruptcy Court lacked jurisdiction to consider Mr. Wallace's Complaint (AP Doc. 1). Therefore, the Motion (Doc. 3) is DENIED as moot.

The case is REMANDED back to the Bankruptcy Court for proceedings consistent with this Opinion.

Entered on this 7th day of November 2023.

*s/ James E. Shadid*
UNITED STATES DISTRICT JUDGE